## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------x
                                        :
**In re**                               :        **Chapter 11 Case No.**
                                        :
**CHARYS HOLDING COMPANY, INC., and**   :
**CROCHET & BOREL SERVICES, INC.,**     :        **08-10289 (BLS)**
                                        :
            **Debtors.**                :        **(Jointly Administered)**
                                        :
------------------------------------------------------------x        **Re: Docket No. 516**

## ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DEBTORS AND CERTAIN NONDEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED DECEMBER 8, 2008

Charys Holding Company, Inc. ("Charys Holding") and its affiliated debtor,

Crochet & Borel Services, Inc. ("C&B"), as debtors and debtors in possession (collectively the

"Debtors") in the above-referenced chapter 11 cases, having proposed and filed the Debtors'

First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates Under

Chapter 11 of the Bankruptcy Code, dated December 8, 2008 (the "Plan"); and the Amended

Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization of Debtors and

Certain Nondebtor Affiliates Under Chapter 11 of the Bankruptcy Code, dated January 8, 2009

(the "Disclosure Statement") having been approved by this Court and duly transmitted to holders

of Claims[1] against the Debtors' estates in compliance with this Court's Order, dated January 8,

2009 (the "Disclosure Statement Order"): (i) approving the notice of Disclosure Statement

hearing; (ii) approving the Disclosure Statement; (iii) fixing record dates; (iv) approving the

notice and objection procedures in respect of confirmation of the Plan; (v) approving forms of

ballots and establishment of procedures for voting on the Plan; and (vi) approving the forms of

notices to non-voting Classes under the Plan; and upon the Certification of Michael J. Paque

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.

With Respect to the Tabulation of Votes on the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates Under Chapter 11 of the Bankruptcy Code, dated February 23, 2009 [Docket No. 657] describing the methodology for the tabulation and results of voting with respect to the Plan (the "Paque Tabulation Certification"); and a hearing having been held before this Court on February 25, 2009 to consider confirmation of the Plan (the "Confirmation Hearing"); and due notice of the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest, in compliance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules, as established by the following affidavits of service, mailing, and publication filed with the Bankruptcy Court: (i) the Affidavit of Service, dated February 23, 2009, of Michael Paque, a Senior Managing Consultant at Kurtzman Carson Consultants, LLC ("KCC") [Docket No. 651] (the "Paque Affidavit" and, together with the Paque Tabulation Certification, the "Paque Filings") and (ii) the Affidavit of Publication of Alice Weber in *The New York Times* (National Edition), dated February 23, 2009 [Docket No. 658] (the "Publication Affidavit"), and such notice being sufficient under the circumstances and no further notice being required; and the Plan Supplement having been filed and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Confirmation Hearing, including (A) the Plan, the Plan Supplement, the Disclosure Statement, and the Disclosure Statement Order, (B) the Affidavit of Stephen Spitzer of AlixPartners, LLC in Support of Confirmation of First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates Under Chapter 11 of the Bankruptcy Code, dated February 23, 2009 (the "Spitzer Affidavit"), (C) the Paque Filings and the Publication Affidavit, (D) the objections to confirmation of the Plan (collectively, the

"Objections"), including (i) Objection by Troy D. Crochet to Confirmation of the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates Under Chapter 11 of the Bankruptcy Code, dated February 5, 2009; (ii) Objection to Confirmation of the First Amended Joint Plan of Reorganization, filed by Benjamin Franklin Holcomb, dated February 10, 2009; and (iii) the Supplemental Objection by Troy D. Crochet to Confirmation of the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates Under Chapter 11 of the Bankruptcy Code, dated February 20, 2009, and (E) the Debtors' Reply to Objection by Troy D. Crochet to Confirmation of the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates under Chapter 11 of the Bankruptcy Code, dated February 20, 2009 (the "Reply"); and the Court being familiar with the Plan and other relevant factors affecting the Debtors' chapter 11 cases; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtors' chapter 11 cases; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

## FINDINGS OF FACT

A. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Jurisdiction. The Court has jurisdiction over the Debtors' chapter 11 cases and confirmation of the Plan pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) and the Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Commencement and Joint Administration of the Debtors' Chapter 11 Cases. On the Commencement Date, each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code. By prior order of the Court, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

D.     Official Committee of Unsecured Creditors. On February 27, 2008, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a committee of unsecured creditors (the "Creditors' Committee").

E.     Judicial Notice. The Court takes judicial notice of the docket of the Debtors' chapter 11 cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the various hearings held before the Court during the pendency of the Debtors' chapter 11 cases.

F.     Solicitation and Notice. On January 8, 2009, the Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the

Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of votes on the Plan. The (i) Disclosure Statement, (ii) Disclosure Statement Order, (iii) letter of support from the Creditors' Committee, (iv) notice of (a) approval of Disclosure Statement; (b) establishment of record dates; (c) Confirmation Hearing and procedures for objecting to confirmation of the Plan; and (v) procedures and deadline for voting on the Plan (the "Confirmation Hearing Notice"), (vi) Ballots and Master Ballots (as defined in the Disclosure Statement Order), and (vii) notices of non-voting status (collectively, the "Solicitation Materials") were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. As described in the Disclosure Statement Order and as evidenced by the Paque Filings and Publication Affidavit, (i) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these chapter 11 cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, and provided due process and an opportunity to appear and to be heard to all parties in interest.

G.     Voting. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Paque Tabulation Affidavit, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

H.     Burden of Proof. The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

I.    <u>Plan Supplement</u>. On February 11, 2009, the Debtors filed the Plan Supplement, which includes the following documents: (i) List of Names and Biographical Information of the Directors of New Holdco; (ii) Form of New Secured Note Indenture; (iii) List of Executory Contracts to be Assumed; (iv) Form of New Employment Agreements; (v) Form of Settlement Agreements; (vi) Form of New Certificate of Incorporation for New Holdco; (vii) Form of New Bylaws for New Holdco; (viii) Form of Charys Holding Company, Inc. Liquidating Trust Agreement; (ix) Form of Crochet & Borel Services, Inc. Liquidating Trust Agreement; (x) List of Indemnified Individuals Pursuant to Section 8.6 of the Plan. On February 13, 2009, the Debtors filed a revised Exhibit 1 to the Plan Supplement, which amended the List of Names and Biographical Information of the Directors of New Holdco. On February 23, 2009, the Debtors filed a supplement to the Plan Supplement, which included the Form of Funding Arrangement Agreement between each of the Liquidating Trusts and New Holdco; and at the Confirmation Hearing the Debtors presented a revised version of the Form of Funding Arrangement Agreement to be part of the Plan Supplement. All such materials comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order and no other or further notice is or shall be required.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

J.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

K.    <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Expense Claims, professional compensation and reimbursement Claims,

Indenture Trustee Fees, and Priority Tax Claims, which need not be classified, Article III of the

Plan designates eighteen Classes of Claims and Equity Interests against the appropriate Debtor.

The Claims and Equity Interests included in each Class are substantially similar to other Claims

and Equity Interests, as the case may be, in each such Class. Valid business, legal, and factual

reasons exist for separately classifying the various Claims and Equity Interests under the Plan,

and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.

The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

     i.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Charys Holding Classes 1, 2, 3 and 4 and C&B Classes 1 and 2 are unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code.

     ii.     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan designates Charys Holding Classes 5, 6, 7, 8, 9, 10, and 11 and C&B Classes 3, 4A, 4B, 5 and 6 as impaired, and Sections 4.5, 4.6, 4.7, 4.8, 4.9, 4.10, 4.11, 4.14, 4.15, 4.16, 4.17 and 4.18 of the Plan specify the treatment of Claims and Equity Interests in such Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.

     iii.     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

     iv.     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). As required by section 1123(a)(5), Article V of the Plan provides for adequate means for implementation of the Plan. Specifically, the Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, the establishment of the Liquidating Trusts and the issuance of the New Equity Interests and New Secured Notes.

     v.     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). Section 9.3 of the Plan provides that the New Organizational Documents for New Holdco shall, to the extent applicable, prohibit the issuance of nonvoting equity

securities, thereby complying with section 1123(a)(6) of the Bankruptcy Code.

vi. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Sections 9.4 and 9.5 of the Plan contain provisions with respect to the manner of selection of directors and officers of the New Holdco that are consistent with the interests of creditors, equity security holders, and public policy, and the Plan and Plan Supplement identify the individuals proposed to serve as directors of New Holdco; and the officers of New Holdco who will serve as of the Effective Date will be comprised of certain current officers of Charys Holding as disclosed at the Confirmation Hearing, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. Section 5.2 and 5.3 of the Plan provide for the designation of the Trustees for the Liquidating Trusts by the applicable Debtor with the consent of the Creditors' Committee.

vii. Additional Plan Provisions (11 U.S.C. § 1123(b)). The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

viii. Impairment/Unimpairment of Classes of Claims and Equity Interests (§ 1123(b)(1)). Pursuant to Article III of the Plan, (a) Charys Holding Class 5 (Cotton Seller Note Claims), Charys Holding Class 6 (CTSI / MSAI Settler Note Claims and Mirror Note Claims), Charys Holding Class 7 (8.75% Senior Convertible Note Claims) Charys Holding Class 8 (General Unsecured Claims Against Charys Holding), Charys Holding Class 9 (Subordinated Debt Claims), Charys Holding Class 10 (Charys Holding Securities Claims), Charys Holding Class 11 (Charys Holding Equity Interests), C&B Class 3 (Other Secured Claims Against C&B), C&B Class 4A (General Unsecured Claims Against C&B), C&B Class 4B (C&B 8.75% Senior Convertible Note Claims), C&B Class 5 (C&B Securities Claims), and C&B Class 6 (C&B Equity Interests) Claims and Equity Interests are impaired; and (b) Charys Holding Class 1 (Other Priority Claims Against Charys Holding), Charys Holding Class 2 (Secured Tax Claims Against Charys Holding), Charys Holding Class 3 (Secured Working Capital Facility Claims Against Charys Holding), Charys Holding Class 4 (Other Secured Claims Against Charys Holding), C&B Class 1 (Other Priority Claims Against C&B), and C&B Class 2 (Secured Tax Claims Against C&B) Claims are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

ix. Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)). Section 8.1 of the Plan provides for the rejection of

the executory contracts and unexpired leases of the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court served prior to the Confirmation Date, (b) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, or (c) that is specifically designated as a contract or lease to be assumed on Schedule 8.1 to the Plan as contemplated by section 1123(b)(2) of the Bankruptcy Code.

x.  Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.4 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code

xi.  Bankruptcy Rule 3016(a).  The Plan is dated and identifies the proponents, thereby satisfying Bankruptcy Rule 3016(a).

L.  Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

Each Debtor has complied with the applicable provisions of the Bankruptcy Code.  Specifically:

i.  Each Debtor is a proper debtor under section 109 of the Bankruptcy Code,

ii.  Each Debtor has complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and

iii.  Each Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan, thereby complying with section 1125 with respect to the Disclosure Statement and the Plan.

M.  Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3)).  The Plan is based

upon extensive, arms'-length negotiations between and among the Debtors, the Creditors'

Committee, and other parties in interest, and represents the culmination of months of intensive

negotiations and discussions among all parties.  The Plan is supported by the Creditors'

Committee and certain other major creditors (including the holders of the Cotton Seller Note Claims and the CTSI/MSAI Seller Note Claims) and was overwhelmingly accepted by creditors (other than Mr. Crochet) as set forth in the Paque Tabulation Certification. The Plan restructures the debt obligations of the Debtors and provides the means through which the Charys Holding enterprise can continue to operate as a viable entity. Thus, the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization for Charys Holding. Further, the release, exculpation and indemnification provisions embodied in the Plan are fair and equitable, and a component of the consensual agreement reached among the Debtors and the various creditor constituencies and are consistent with sections 1123 and 1129 of the Bankruptcy Code.

N.    Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)). All payments made or to be made by any of the Debtors for services or for costs and expenses in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identities of those persons who will serve on the Effective Date of the Plan as directors of New Holdco have been disclosed in the Plan Supplement. The identity of the officers of New Holdco who will serve on the Effective Date were disclosed at the Confirmation Hearing and are comprised of certain current officers of Charys Holdings. Following the Effective Date, the Board of Directors of New Holdco will determine what changes, if any, will be made to the composition of the officers of New Holdco and their compensation. The members of the Board of Directors will serve in

accordance with the New Organizational Documents as the same may be amended from time to time. The appointment, or continuation in office, of such individuals is consistent with the interests of creditors and with public policy.

      P.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. No rates are being changed that require approval of a governmental regulatory commission, and accordingly, this section is inapplicable to the Plan.

      Q.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The "best interests" test is applicable only those (i) holders of Claims that voted to reject the Plan in Charys Holding Class 7 (8.75% Senior Convertible Note Claims Against Charys Holding), Charys Holding Class 8 (General Unsecured Claims Against Charys Holding), and C&B Class 3 (Other Secured Claims Against C&B), and (ii) holders of Claims and Equity Interests in Charys Holding Class 9 (Subordinated Debt Claims), Charys Holding Class 10 (Charys Holding Securities Claims), Charys Holding Class 11 (Charys Holding Equity Interests), C&B Class 4B (C&B 8.75% Senior Convertible Note Claims), C&B Class 5 (C&B Securities Claims), and C&B Class 6 (C&B Equity Interests) under the Plan, which will not receive or retain any property under the Plan, and therefore, are deemed to have rejected the Plan. As demonstrated by the Spitzer Affidavit and the liquidation analysis contained in the Disclosure Statement, which employed commonly accepted methodologies and reasonable assumptions, each holder of an impaired Claim against or Equity Interest in the Debtors either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

R.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Charys Holding Classes 1, 2, 3 and 4, and C&B Classes 1 and 2 are Classes of unimpaired Claims each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Charys Holding Classes 5, 6, 7 and 8, and C&B Class 4A, which are the impaired Classes of Claims against the Debtors entitled to vote on the Plan, have voted to accept the Plan, in accordance with section 1126(b) and (c) of the Bankruptcy Code. C&B Class 3, which is other Secured Claims against C&B is impaired by the Plan and has voted to reject the Plan, and Charys Holding Classes 9, 10 and 11, and C&B Classes 4B, 5, and 6, which are Claims against, and Equity Interests in, the applicable Debtors, are impaired by the Plan and are not entitled to receive or retain any property under the Plan, and therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the rejection of C&B Class 3, and deemed rejection of Charys Holding Classes 9, 10, and 11, and C&B Classes 4B, 5, and 6, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the rejecting Classes.

S.     Treatment of Administrative Expense Claims, Priority Tax Claims, Secured Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (C) of the Bankruptcy Code. The treatment of Other Priority Claims Against Charys Holding, Other Priority Claims Against C&B, Secured Tax Claims Against Charys Holding, and Secured Tax Claims Against C&B pursuant to Section 4.1, 4.2, 4.12, and 4.13 of the Plan satisfies the requirements of sections 1129(a)(9)(B) and (D) of the Bankruptcy Code, as applicable.

T.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). Charys Holding Classes 5, 6, 7 and 8, and C&B Class 4A, each of which is impaired under the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.     Feasibility (11 U.S.C. § 1129 (a)(11)). The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing and in the Spitzer Affidavit: (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible, there is a reasonable likelihood that New Holdco will meet its financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of New Holdco, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.     Payment of Fees (11 U.S.C. § 1129(a)(12)). As required pursuant to Section 13.9 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, and will continue to be paid thereafter as required, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). In the ordinary course of their business, the Debtors did not have obligations with respect to retiree benefits. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

X.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Debtors have requested that the Court confirm the Plan notwithstanding C&B Class 3 (Other

Secured Claims Against C&B) voted to reject the Plan, and Charys Holding Class 9 (Subordinated Debt Claims), Charys Holding Class 10 (Charys Holding Securities Claims), Charys Holding Class 11 (Charys Holding Equity Interests), C&B Class 4B (C&B 8.75% Senior Convertible Note Claims), C&B Class 5 (C&B Securities Claims), and C&B Class 6 (C&B Equity Interests) (collectively, the "Rejecting Classes") were deemed to reject the Plan. The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to the Rejecting Classes. Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. The Plan does not "unfairly discriminate" because each Rejecting Class is of a different legal nature and priority, and no Class of Claims or Equity Interests of similar legal rights is receiving different treatment under the Plan. The Plan is fair and equitable as to the Rejecting Classes because (i) Charys Holding Class 11 (Equity Interests) and C&B Class 6 (Equity Interests) meet the requirements of section 1129(b)(2)(C) of the Bankruptcy Code because no junior interest is receiving or retaining a distribution under the Plan, (ii) Charys Holding Class 9 (Subordinated Debt Claims) meets the requirements of section 1129(b)(2)(B) because section 510 of the Bankruptcy Code provides that subordination agreements are enforceable in bankruptcy cases, senior Classes entitled to the benefit of the subordination are not being paid in full and no Classes junior to Charys Holding Class 9 are receiving any distribution under the Plan, (iii) Charys Holding Class 10 (Securities Claims) and C&B Class 5 (Securities Claims) meet the requirements of section 1129(b)(2)(B) because such Claims are subordinated to the same priority as equity pursuant to section 510 of the Bankruptcy Code and no junior Classes are receiving or retaining any distribution under the Plan, and (iv) as to C&B

Class 3, any collateral securing the claim will be sold by the C&B Liquidating Trust with the secured claimant to receive the proceeds thereof in accordance with the priority of its security interest in such collateral or the claimant will receive the indubitable equivalent of its secured claim, thereby satisfying section 1129(b)(2)(A). In addition, by accepting the Plan, the Noteholders in Charys Holding Class 7 have agreed to waive any distribution against C&B as provided in C&B Class 4B. Based on the foregoing the requirements of section 1129(b) of the Bankruptcy Code are met with respect to each of the Rejecting Classes and the Plan may be confirmed notwithstanding the rejection by the Rejecting Classes.

Y.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the chapter 11 cases.

Z.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

AA.     Good-Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court, (i) the Debtors are deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors, the Creditors' Committee, New Holdco, and the Affiliated Plan Proponents, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives shall be deemed to have

15

participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of any securities under the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.9 of the Plan.

BB. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

CC. <u>Implementation</u>. All documents necessary to implement the Plan, including, without limitation, those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

DD. <u>Assumption of Executory Contracts and Unexpired Leases</u>. The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption of executory contracts and unexpired leases pursuant to the Plan.

EE. <u>Transfers by Debtors</u>. All transfers of property of the Debtors' estates, including, without limitation, the transfer and assignment of assets to the Liquidating Trusts and the issuance and delivery of the New Equity Interests shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Order.

FF.    Injunction, Exculpation, and Releases. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Sections 11.6, 11.9, and 11.10 of the Plan, respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases and exculpation set forth in Sections 11.6, 11.9 and 11.10 of the Plan. Such provisions are fair and reasonable and are in the best interests of the Debtors, their estates, and parties in interest. Further, the exculpation provision in the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence. Based upon the record of these chapter 11 cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law.

GG.    Global Settlement. Pursuant to Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency Claim.

HH.    Valuation. Pursuant to the valuation analyses set forth in the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to holders

17

of Subordinated Debt Claims, Charys Holding Securities Claims, Charys Holding Equity Interests, C&B Securities Claims, and C&B Equity Interests under absolute priority principles.

II.     As stated on the record of the Confirmation Hearing, the Funding Arrangement and the Funding Arrangement Agreement have been modified to reflect that the Liquidating Trusts shall not be required to pay to New Holdco any stock of New Holdco, any proceeds thereof, or any dividends or other distributions paid with respect thereto on account of the Obligations (as such term is defined in the Funding Arrangement Agreement). Such modification does not adversely change in any material respect the treatment of any Claim of any creditor or Equity Interests of any equity security holder who has not accepted the modification in writing.

JJ.     The Amended Renewal Promissory Note, dated as of November 30, 2006, in the amount of $77,932,514.15, payable by Charys Holding Company, Inc. to Troy D. Crochet, and all obligations related thereto, do not have the benefit of any subordination agreement with respect to the 8.75% Senior Convertible Notes as to any guarantees in favor of the 8.75% Senior Convertible Notes.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     Confirmation. All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement and the supplements to the Plan Supplement, including, the List of Names and Biographical Information of the Directors of New Holdco, the Form of New Secured Note Indenture, the List of Executory Contracts to be

18

Assumed, the Form of New Employment Agreements, the Form of Settlement Agreements, the Form of New Certificate of Incorporation for New Holdco, the Form of New Bylaws for New Holdco, the Form of Charys Holding Company, Inc. Liquidating Trust Agreement, the Form of Crochet & Borel Services, Inc. Liquidating Trust Agreement, the List of Indemnified Individuals Pursuant to Section 8.6 of the Plan, and the Form of Funding Arrangement Agreement are authorized and approved. The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

2. <u>Plan Supplement</u>. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the trustees of the applicable Liquidating Trusts, or New Holdco, as applicable, are authorized and approved when they are finalized, executed and delivered. Without further order or authorization of this Court, the Debtors, the Liquidating Trusts, New Holdco and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

3. <u>Objections</u>. All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated. All Objections, responses, statements, and comments in opposition to

the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are overruled for the reasons stated on the record.

4. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Notice of the Plan Supplement, and all related documents, was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

5. <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

6. <u>Plan Classification Controlling</u>. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no

event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Liquidating Trusts, New Holdco, creditors, or interest holders for purposes other than voting on the Plan.

7.     Global Settlement.  Pursuant to Section 5.1(b) of the Plan, sections 105 and 1123(b)(3) of the Bankruptcy Code, and Bankruptcy Rule 9019, on the Effective Date, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.

8.     Merger, Dissolution, or Consolidation of Corporate Entities.  Pursuant to Section 5.1(e) of the Plan, on or as of the Effective Date or as soon as practicable thereafter (or, in case of clause (b), at any time following the Confirmation Date), and without the need for any further action, the Debtors may, with the prior consent of the Creditors' Committee (a) cause any of the Debtors to be merged with and into the other Debtor, dissolved or otherwise consolidated, (b) cause C&B to be merged with, or converted into, a limited liability company, or (c) engage in any other transaction in furtherance of the Plan.

9.     Cancellation of Existing Securities and Agreements.  Pursuant to Section 5.1(d)(i) of the Plan, except (a) as otherwise expressly provided in the Plan, (b) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (c) for purposes of evidencing a right to distributions under the Plan, or (d) with respect to any Claim that is reinstated and rendered Unimpaired under the Plan, on the Effective Date, the 8.75% Senior Convertible Notes (and all documents and instruments related thereto), the Mirror Notes, all instruments and documents representing or evidencing the Cotton Seller Note Claims, CTSI / MSAI Seller Note Claims, Mirror Note Claims, all instruments and documents representing or

evidencing the subordinated debt, the Indentures and other instruments or documents evidencing any Claims or Equity Interests shall be deemed automatically cancelled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors under the agreements, instruments and other documents, indentures, and certificates of designations governing such Claims and Equity Interests, as the case may be, shall be discharged; *provided, however,* that the 8.75% Senior Convertible Notes, the Mirror Notes, and the Indenture shall continue in effect solely for the purposes of (a) allowing the holders of the 8.75% Senior Convertible Notes and the Mirror Notes to receive their distributions under the Plan, and (b) allowing the Disbursing Agent or the Indenture Trustee, as the case may be, to make such distributions, if any, to be made on account of the 8.75% Senior Convertible Notes Claims and Mirror Note Claims.

10.     Discharge of Indenture Trustee.  Pursuant to Section 5.1(d)(ii) of the Plan, subsequent to the performance by the Indenture Trustee or its agents of any duties that are expressly required under the Plan, and the Confirmation Order and/or under the terms of the Indenture, the Indenture Trustee and its agents shall be relieved of, and released from, all responsibilities and obligations associated with the 8.75% Senior Convertible Notes arising under the Indenture or under other applicable agreements or law and the Indenture shall be deemed to be discharged.

11.     Issuance of New Equity Interests and New Securities.  The issuance by New Holdco of the New Equity Interests and New Secured Notes on the Effective Date is authorized without the need for any further corporate action and without any further action by holders of Claims or Equity Interests.  The Debtors and the Creditors' Committee and its members (and each of their respective members, Affiliates, agents, directors, officers,

employees, advisors, and attorneys) have, and upon confirmation of the Plan (including all documents necessary to effectuate the Plan or otherwise contemplated by the Plan, including those contained in the Plan Supplement) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regards to the issuance and distribution of the New Equity Interests under the Plan, and therefore are not, and on account of such distribution will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

12.     Restructuring Transactions.  The Restructuring Transactions set forth in Section 5.2 of the Plan are approved in all respects and the Debtors, the Indenture Trustee, New Holdco and the Affiliated Plan Proponents are authorized to take all action in order to effectuate and implement the Restructuring Transactions.

13.     Exemption from Securities Laws.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Equity Interests, New Secured Notes and beneficial interests in the Liquidating Trusts will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.

14.     The Liquidating Trusts.  On or before the Effective Date, the Charys Holding Liquidating Trust Agreement and the C&B Liquidating Trust Agreement shall be executed by the parties thereto, and all other necessary steps shall be taken to establish the Liquidating Trusts.  The Charys Liquidating Trust Assets and the C&B Liquidating Trust Assets

shall be transferred to the applicable Liquidating Trust in accordance with the provisions of the Plan.

15.    Distributions Under the Plan.  All distributions under the Plan shall be made in accordance with Article VI of the Plan.

16.    Disputed Claims.  The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.

17.    Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  Pursuant to Section 8.1 of the Plan, as of the Effective Date all executory contracts and unexpired leases that exist between the Debtors and any person or entity shall be deemed rejected by the Debtors, except for any executory contract or unexpired lease (i) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date, or (iii) that is specifically designated as a contract or lease to be assumed on Schedule 8.1, contained in the Plan Supplement.

18.    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.  Entry of the this Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 of the Plan, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of

entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases, and (iii) the approval, pursuant to section 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

19. <u>Inclusiveness</u>. Unless otherwise specified on Schedules 8.1 of the Plan Supplement, each executory contract and unexpired lease listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

20. <u>Cure of Defaults</u>. Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 of the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to the later of (a) the hearing on the Debtors' motion for assumption or assumption and assignment and (b) the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section 8.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed. The parties to such executory contracts or unexpired leases to be assumed or assumed and assigned by the Debtors shall have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by

the Bankruptcy Court. Notwithstanding Section 8.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

21.     Bar Date for Filing Proofs of Claim Relating to Executory Contacts and Unexpired Leases Rejected Pursuant to the Plan. In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or New Holdco, or their properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon Kurtzman Carson Consultants, LLC, the Debtors' Court-appointed Claims agent, on or before the date that is 30 days after the later of (i) the date of service of notice of the Confirmation Date, (ii) notice of modification to Schedule 8.1 of the Plan Supplement (solely with respect to the party directly affected by such modification), or (iii) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such rejection).

22.     Indemnification and Reimbursement Obligations. Subject to the occurrence of the Effective Date, the obligations of Charys Holding and/or C&B to indemnify and reimburse those officers, directors and employees set forth on an Exhibit 10 contained in the Plan Supplement against and for any obligations pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the

Commencement Date and all such obligations shall be, and shall be deemed to be assumed by New Holdco as of the Effective Date; provided, however, that in no circumstance shall New Holdco assume any obligation to indemnify or reimburse any individual in connection with the fraud, willful misconduct, or gross negligence of such individual. In furtherance of the foregoing, New Holdco will obtain a directors' and officers' insurance policy with tail coverage for a period of six years from an insurer whose rating with A.M. Best is no lower than that of the insurers of the policies in existence on the Effective Date for the current and former officers and directors of the Debtors, provided, however, that such policy shall have an aggregate cost of no more than an amount as agreed on by the Debtors and the Creditors' Committee.

23.    Insurance Policies. Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan effective as of the Effective Date. Nothing contained in this Section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

24.    Compensation and Benefit Plans. All Benefit Plans of Charys Holding, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are assumed under the Plan. Charys Holding's obligations under such plans and programs shall survive confirmation of the Plan and shall be and shall be deemed to be assumed by New Holdco, except for (a) executory contracts or Benefit Plans expressly rejected pursuant to the Plan (to the extent

such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code), (b) executory contracts or employee Benefit Plans that have previously been rejected, are the subject of a motion to reject pending as of the Confirmation Date or have been specifically waived by the beneficiaries of any employee Benefit Plan or contract and (c) such executory contracts or employee Benefit Plans to the extent they relate to former employees whose employment by the Debtors terminated prior to the Commencement Date. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, no equity, stock, option or other similar plans in effect on or prior to the Commencement Date shall be assumed and such plans shall be cancelled.

25. Directors and Officers. Pursuant to Section 9.1 of the Plan, effective as of the Effective Date, the management, control and operation of New Holdco shall become the general responsibility of the Board of Directors of New Holdco. Pursuant to Section 9.4 of the Plan, effective as of the Effective Date, the persons identified in the Plan Supplement as members of the initial Board of Directors of New Holdco are deemed designated. Certain officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of New Holdco on and after the Effective Date. Such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement entered into with New Holdco on or after the Effective Date and the New Organizational Documents. Pursuant to Section 9.6 of the Plan, New Holdco shall be deemed to have adopted the New Employment Agreements

26. Vesting of Assets. Pursuant to Section 11.1 of the Plan, (i) on or after the Effective Date (a) the Charys Trustee may dispose of the assets of the Charys Liquidating Trust free and clear of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Charys Liquidating Trust Agreement, and (b) the C&B Trustee may dispose of the assets of the C&B Liquidating Trust free and clear of any restrictions of the Bankruptcy

Code, but in accordance with the provisions of the Plan and the C&B Liquidating Trust Agreement, and (ii) as of the Effective Date, all property of New Holdco, and the Liquidating Trusts shall be free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided in the Plan.

27.     Discharge of Claims and Termination of Equity Interests. The rights afforded in and the payments and distributions to be made under the Plan shall terminate all Equity Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Equity Interests shall be precluded and enjoined from asserting against New Holdco, its successors or assigns or any of its assets or properties, or against the Liquidating Trusts or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of equity interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

28.     Discharge of Debtors. Upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the

Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors. In addition, upon the Effective Date, each holder of an 8.75% Senior Convertible Note Claim, each holder of a Mirror Note Claim, and the Indenture Trustee (as well as any trustees and agents on behalf of each holder) and any Affiliate of such holder shall be deemed to have waived, released and discharged the Affiliated Plan Proponents from any Liens, Claims, causes of action, rights or liabilities arising from notes issued under, and the guarantees issued pursuant to, the Indenture. The Indenture Trustee is authorized and directed to take all such actions necessary to effectuate the foregoing. Upon the Effective Date, all such persons shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claim against the Affiliated Plan Proponents.

        29.   Injunction. Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Equity Interests in either of the Debtors, and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors or the Liquidating Trusts, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Liquidating Trusts, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or the Liquidating Trusts or against the property or interests in property of the Debtors or the Liquidating Trusts, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors or against the property or

interests in property of the Debtors, or the Liquidating Trusts with respect to such Claim or Equity Interest or (v) pursuing any claim released pursuant to Article XI of the Plan. Such injunction shall extend to any successors of the Debtors and the Liquidating Trusts, including, without limitation, New Holdco, and their respective properties and interests in properties.

30.     Terms of Injunction. Unless otherwise provided in this Order, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

31.     Exculpation. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, none of the Debtors, New Holdco, the Affiliated Plan Proponents, the Liquidating Trusts, the Creditors' Committee, the Ad Hoc Noteholders Committee, and the Indenture Trustee, and their respective officers, directors, members, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors and attorneys and representatives (but, in each case, solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Reorganization Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Reorganization Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided, however*, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence. Any of the forgoing Persons in all respects shall be entitled to rely upon the advice

of counsel with respect to any of the foregoing. The foregoing exculpation shall not apply to the Non-Released Parties.

32.    Releases.   Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of (a) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Debtors who acted in such capacities after the Commencement Date; (b) the Indenture Trustee; and (c) the members of the Creditors' Committee, and their respective professionals in connection with the Reorganization Cases; (x) the Debtors, the Affiliated Plan Proponents, and New Holdco; (y) each holder of a Claim that votes to accept the Plan (or is deemed to accept the Plan) and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Equity Interest that does not vote to accept the Plan, shall release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity after the Commencement Date, the Affiliated Plan Proponents, the Indenture Trustee, the Creditors' Committee, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives (but, in each case, solely in their capacities as such) from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of the Reorganization Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; *provided, however,* that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of

any such person or entity; and *provided further, however*, that the foregoing release shall not apply to the Non-Released Parties.

33.     Avoidance Actions/Objections.  Pursuant to Section 11.11 of the Plan, other than any releases granted herein, in the Plan, or other Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidating Trusts, as applicable, shall have the right to prosecute any avoidance or equitable subordination or recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession, *provided however*, that the Debtors shall be deemed to have waived all causes of action including avoidance, equitable subordination, and recovery actions against the Indenture Trustee and holders of 8.75% Senior Convertible Note Claims and Mirror Note Claims.

34.     Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 10.1 of the Plan have been satisfied or waived pursuant to Section 10.2 of the Plan.  In the event that one or more of the conditions specified in Section 10.1 of the Plan have not occurred or otherwise been waived pursuant to Section 10.2 of the Plan, within 60 days after the Confirmation Date or such later date as may be agreed upon by the Debtors and the Creditors' Committee, then (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and interests including any Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtors' obligations with respect to Claims and equity interests shall remain unchanged and nothing contained herein or in the Plan shall constitute or be deemed a waiver or release of any Claims or equity interests by or against the Debtors or any other Person or to

prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

35.     Retention of Jurisdiction. This Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Reorganization Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

> i.      To hear and determine pending motions or applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Reorganization Cases;
>
> ii.     To determine any and all adversary proceedings, motions, applications and contested matters pending on or commenced after the Confirmation Date;
>
> iii.    To hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;
>
> iv.     To hear and determine any objections to, or requests for estimation of Disputed Administrative Expense Claims and Disputed Claims, in whole or in part and otherwise resolve disputes as to Administrative Expense Claims and Claims;
>
> v.      To resolve disputes as to the ownership of any Administrative Expense Claim, Claim or Equity Interest;
>
> vi.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;
>
> vii.    To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;
>
> viii.   To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

ix.     To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated by the Plan, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

x.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or by the Liquidating Trustees or any Disbursing Agent after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

xi.     To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

xii.    To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

xiii.   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

xiv.    To hear and determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

xv.     To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

xvi.    To hear all disputes concerning the Liquidating Trusts;

xvii.   To enter a final decree closing the Reorganization Cases; and

xviii.  To hear any other matter not inconsistent with the Bankruptcy Code

36.     Effectuating Documents and Further Transactions. Pursuant to Section

13.1 of the Plan, as of the Effective Date, the Debtors, New Holdco, the Affiliated Plan

Proponents, and the Liquidating Trusts are authorized to execute, deliver, file, or record such

contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

37. Withholding and Reporting Requirements. Pursuant to Section 13.2 of the Plan, in connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

38. Corporate Action. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors and/or their affiliates, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors and/or their affiliates are incorporated, without any requirement of further action by the stockholders or directors of any such entities.

39. Modifications. Without need for further order or authorization of the Court, the Debtors, subject to the prior consent of the Creditors' Committee, are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

40. Payment of Statutory Fees. On the Effective Date, All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid.

41. Post-Confirmation Date Professional Fees and Expenses. From and after the Confirmation Date, Charys Holding or C&B, as the case may be, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by them.

42. Dissolution of Creditors' Committee. On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Reorganization Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of (i) filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith, and (ii) reviewing and objecting to the applications of other parties for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

43. Indenture Trustee as Claim Holder. Consistent with Bankruptcy Rule 3003(c), the Debtors shall recognize a proof of Claim timely filed by the Indenture Trustee in respect of any Claims under the Indenture. Accordingly, any Claim for principal and interest under the 8.75% Senior Convertible Notes, proof of which is filed by the registered or beneficial holder of any 8.75% Senior Convertible Notes, is disallowed as duplicative of the Claim of the Indenture Trustee, without any further action of the Bankruptcy Court.

44. Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New Secured Notes and New Equity Interests, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

45. Binding Effect. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not such Claim or Equity Interest is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan. Additionally, subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a 8.75% Senior Convertible Note Claim, Mirror Note Claim, and the Indenture Trustee and such holder's respective successors and

assigns, whether or not such Claim or Equity Interest is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

46. Notice of Entry of Confirmation Order. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Debtors shall file and serve notice of entry of this Order in substantially the form annexed hereto as Exhibit B (the "Notice of Confirmation Order") on all creditors and interest holders, the United States Trustee for the District of Delaware, the attorneys for the Creditors' Committee, and other parties in interest, by causing the Notice of Confirmation Order to be delivered to such parties by first-Class mail, postage prepaid, within ten (10) business days after entry of this Order. The Notice of Confirmation Order shall also be posted on the website of the Debtors' Court-appointed voting and tabulation agent, Kurtzman Carson Consultants, LLC, at: www.kccllc.net/charys. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The form of Notice of Confirmation Order substantially in the form annexed hereto as Exhibit B is approved.

47. Notice of Effective Date. As soon as practicable after the occurrence of the Effective Date, the Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice in these chapter 11 cases.

48. Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

49. Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or a schedule or document in the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be

governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

50.     Conflicts Between Order and Plan.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however,* that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

51.     Final Order.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: February 24, 2009
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE